IN THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF INDIANA

WESLEY I. PURKEY,

          Plaintiff,

vs.

H. J. MARBERRY, Warden
United States Penitentiary
Terre Haute, Indiana

&

WENDY J. ROAL, Assistant Warden/Food Service
United States Penitentiary
Terre Haute, Indiana

&

DAVID YOUNG, Assistant Warden/Food Service
United States Pententiary
Terre Haute, Indian

&

STEPHEN JULIAN, Unit Manager/Special Confinement Unit
United States Penitentiary
Terre Haute, Indiana

&

BRUCE RYHERD, Case Worker/Special Confinement Unit
United States Penitentiary
Terre Haute, Indiana

&

CRAIG COIL, Superintendent Food Service
United States Penitentiary
Terre Haute, Indiana,

          Defendants.

---

2:09-cv-0044 WTL-DML

C I V I L

R I G H T S

C O M P L A I N T

W I T H

A  J U R Y   T R I A L

D E M A N D

---

I.   Preliminary Statement

The Plaintiff Wesley I. Purkey (hereafter "Purkey"), acting pro se brings this action under **Bivens v. Six Unknown Agents of the Federal Bureau of**

1.

**Investigation, infra** seeking redress and remedy for violations of his rights, privileges, and immunities secured to him under the First and Eighth Amendments to the United States Constitution, as well as set forth under the Religious Freedom Restoration Act (hereafter "RFRA"), whereas the named defendants acted under color of Federal law for purposes of--all claimed presented in this action, and did so either individually or in concert harmony to deprive him of rights secured to him under the First Amendment's Establishment Clause, as well as the First Amendment's prohibition against retaliatory actions for exercising protected speech. Further' Purkey seeks redress and remedy through prospective relief, damages in the nature of both compensatory and punitive damages for denying him a religious diet consistent with his Buddhist faith, as well as through a protracted period serving him spoiled and rottern food items through a super-fluous religious diet and then subjecting him to retaliatory actions for him seeking redress through the administrative grievance procedures for the denial of being provided a certified religious diet by punishing him with punitive action for his fasting. Finally' Purkey seeks an award of attorney fees and all cost incurred in prosecuting this action.

<u>II.    Jurisdiction, Venue And Cause of Actions</u>

1.    This Court has jurisdiction of this ction pursuant to 28 U.S.C. § 1331, inasmuch as it arises under the Constitution of the United States, and pursuant to 28 U.S.C. § 1343(a)(3) because this action seeks to redress the deprivations, under federal authority, of civil rights.

2.    Venue is proper in this district court pursuant to 28 U.S.C. § 1391.

3.    Declaratory relief is authorized pursuant to Rule 57 of the Federal Rules of Civil Procedures and 28 U.S.C. §§ 2201, 2202.

4.    Purkey brings this action pursuant to **Bivens v. Six Unknown Named Agents of the Federal Bureau of Investigation,** 403 U.S. 388 (1971) to redress the deprivation, under federal authority, of rights and immunities secured to

a new 'revised religious diet has been handed down by the Central Office' for compliance throughout all BOP Facilities. Through the months of May and June 2008 Purkey was served small cups of sardines and a small bag of chips sometimes a sequence of three or four days, and then ultimately substituted with a small cup of peanut butter in sequence for three of four days. At times on these same dates he was provided a small packet of instant oatmeal with nothing else for breakfast, whereas he had absolutely no means whatsoever for cooking the oatmeal served at these times. He filed numerous administrative grievances anent these deficient religious diet food items, which were totally contrary to what was designated for serving on the Central Certified Diet Program menu, but the defendants all advised Purkey that he is receiving what is designated on the Common-fare Menu. During this time period the majority of SCU prisoners who were receiv-religious diets were force off of them by the gross deficiencies, not to mention the rotten and spoiled food items being served on them. In joking fashion during administrative rounds in the unit with Warden Marberry, Chaplain O'Dean and Asst. Warden Young present Food Service Supervisor Coil told Purkey that, "if you stay on the religious diet's you might not have to worry about being executed with all the weight you are losing." That particular morning for breakfast Purkey had been given one bag of uncooked oatmeal and a small rotten apple for breakfast, and when he complained to Mr. Ryherd concerning such Case Worker Ryherd advised him that he might consider coming off the religious diet program as so many other death row prisoners had.

3.    After becoming extremely sick from eating spoiled food items on the Religious Diets and being seen by medical personnel, i.e. K Klink MS FNP who advised Purkey that there truly was nothing that she could do for the food poison-ing because it simply had to run its course. She further stated that because of the protracted nature of the food poisoning occurences that Purkey might want to

5.

consider getting off the religious diets. Purkey had suffered extreme headackes, vomiting, sweats and stomack burning after being subject to consuming spoiled and/or uncooked food items on the commonfare trays in June 2008. After filing grievances in redress of these food poisoning and discussing them with defendant Ryherd, Mr. Ryherd advised Purkey on June 12th, 2008 that no one cares about your grievances, and that if Purkey did not appreciate the spoiled and rotten food items being served then get off the religious diets as everyone else was.

4.    The enormous and protracted deficiencies in the Religious Diet's began after the defendants speciously claimed that the Central Office had implement a new 'revised' commonfare menu which under the applicable BOP Policy was to be implemented BOP wide. In fact the defendants made these specious claims to Purkey on a number of occasions through May and July of 2209 and advised him that this was basically why spoiled and rotten food items were being served was to get rid of the old commonfare entrees and bring in the new. Through a written response to one of Purkey's copious complaints made to her office regarding the rotten and spolied food items being served that had caused him on several different occasions to become extremely ill clarified that a "New Certified Food Program' has been implemented at USP/TH, dated July 25th, 2008. The mendacity of this claim would quickly be seen for what it was, nothing more than a sham to conceal the reality of the shortage being served on the religious diets' as well as the spoiled and rotten food items being served.

5.    On June 10th, 2008 with Warden Marberry, A.W. Young present during administrative rounds defendant Coil advised Purkey that due to budgeting that they, USP/TH had been forced to significantly reduce the food portions and items being served on the Religious Diets. When Purkey asked Mr. Coil with the other defendants present why he was not being provided what the religious diet menu designated and in-lieu of being repeatedly served with sardines and peanutbutter

6.

meal after meal, and then served spoiled and rotten food items as well, including spoiled and clearly obviously rotten fruit Mr. Coil clarified that, "we do not have in the new food items for serving on the revised religious diet menu, and we are trying to get rid of the old food items before starting out with the revised menu."

6.      The following day after being shorted yet again the designated food items on the religious diet menu, including being served spoiled fruit Officer In Charge 'Daughtery' told Purkey that, "no one give a f--- about your grievances, stick those grievances up your ass and those commonfare meals up your mon's ass." In usual ostracism to the claims presented anent the rampant shortages on the commonfare meals and spoiled food items being served defendant Ryherd claims that food service assured him that suitable substitutions are being made for the non/served designated food items, and of course disregarding the claims of spoiled and rotten food--items being served.  This is the typical response given by defendant Ryherd in violation with applicable BOP Policy mandating that an independent investigation be taken regarding legitimate claims presented through administrative remedies.  As defendant Ryherd has perspicuously clarified that he does not care about BOP Policy and Regulation, and does not care about Purkey's grievances being filed in redress of the religious diet's.  In fact in the past Case Worker Ryherd via Correction Officer Cope told Purkey and other inmates that if you want to continue filing grievances then we will start filing disciplinary actions.  This threat actually came to past when Defendant Ryherd told Purkey that you either withdraw the grievance you have filed anent the conditions of confinement issues or I will have you subject to a cell extraction by the S.O.R.T.  This is the mentality permeating the obstinacy to the defendants turning a blind eye and deaf ear to providing Purkey with a religious diet and addressing the blatant shortages and spoiled--foods being served on it.

7.

7.   On November 10th, 2008 Food Service Personnel, Wheeler brought the reality of the ongoing shortages, serving of rotter foods and the defendants ossify obstibancy to comply with BOP Policy in providing Purkey and others similarly situated with a religious Diet.  He explained to Purkey out on the Recreational Area that, "You guys know as well as everyone who works for Coil thathe will lie at the drop of a hat depending on who he is talking with and what he is addressing.  He refuses to order enough to provide what is designated on the commonfare diet, and since he is trying to make Assistant Warden he is going out of his way to look good in front of those people he needs to impress to get there, and what better way to do that than save money at the expense of you guys, particularly the religious diets that are of the greater expense than regular meals.  Rather than throw away spoiled and rotten food items, including fruit and/or serve it to general population which would cause enormous problems he has told us to serve the rotten and spoiled food items and fruit to the SCU and SHU.  In fact Mr. Wheeler went onto clarify that Food Service received 50 to a 150 grievances a week regarding food related issues, but as Coil had reiterated to him numerous times that all of those grievances were merely a waste of time because **'we' (food service) always answer the grievances fil**ed **against us.** Mr. Wheeler was candid enough to say that no one liked Coil because they all knew him for what he was, and that he was sorry but until Coil is gone that he is not going to comply with BOP Policy in following the centralized menu handed down by the Central Office and he is going to continue the shortages to save money and make himself look good to those who he needs toimpress to move up the ladder. Other inamtes heard this conversation Purkey shared with Mr. Wheeler that date who were also on the recreation yard.

8.   On or about July 9th, 2008 - - - - - Warden Marberry, Chaplain O'Dean and Defendants Ryherd during administrative rounds was advised by Purkey that

8.

he was extremely sick vomiting, headacke, diarhea and stomack burning from consuming spoiled food the night before and was not able to eat the continuing spoiled food being served on commonfare. Mr. Coil told Warden Marberry that supposedly that USP/TH was in a transition from the old commonfare religious diets to a new one the Central Office has brought out, and that they had not gooten in all of the new food items to be served. The defendants advised Purkey that if he did not appreciate what was being served on the commonfare diets that he simply needed to get off the same. In fact defendant Coil ventured that really we are not required to provide you with a religious diet to start with, you being Buddhist which is not a religion to start with. Buddhism is pretty much the same as athe-ism and we are not required to provide atheistic with religious diets. The defendants all laughed about that as they walked away from Purkey's cell.

9.   A week later on July 16th, 2008 because Purkey had not been able to eat anything for the previous three days due to spoiled food items being served he took a regular tray telling OIC Moore that he was hungry and wanted something to eat that eh was not going to become extremely ill from eating. In other words the defendants forced Purkey off of his religious diet based on their obstinacy to to the pervasive shortages and spoiled and rotten food items being served on the commonfare meals.

10.   Through a year period Purkey had filed many, many grievances and Cop Out's in seeking redress for the prevalent and pervasive shortages, spoiled or rotten food items and the uncooked food items as well. See Attached and marked as Appendix (A).

Count   Two

CROSS CONSTITUTIONAL EIGHTH AMENDMENT VIOLATION FOR SUBJECTING PURKEY<br>TO CRUEL AND UNUSUAL PUNISHEMENT THROUGH THE PERVASIVE SERVING<br>OF UNCOOKED, SPOILED AND ROTTEN FOOD ITEMS

9.

11.   As delineated and enunicated through the foregoing paragraphs (1) thr (10) under Count One Purkey was subject to food poisioning and suffered extreme food-borne ramifications from  being served uncooked, spoiled and rotten food items on the Religious Diet for a protracted and ongoing period of over a year to date.  Numerous times Purkey had been seen by medical and was told anent his claims of being subject to food poisoning from the spoiled, rotten and/or un-cooked food items on the Commonfare Diets that there was absolutely nothing medical could do for food poisoning and that he would be required to simply deal with the consequences of the food poisoning(s) until they ran their course.  Purkey submitted many, many sick call slips, but because of medical's claim that nothing could be done to remedy the ill effects of the food-borne poisonings he was actualy seen by medical with exception of a few different times.  In fact Purkey was encouraged to stop submitting sick call request regard the ongoing food-borne poisoning because medical could not in any fashion provide even the most cursory treatment for such.

12.   On February 4th, 2009 Purkey advised warden Marberry, as well as defendants Julian, Ryherd and Coil that he had became extremely ill the night before after eating uncooked food on the commonfare meal.  In fact he advised Warden Marberry that he tried to get the office passing the commonfare meals out to heat the cold entree for him utilizing the mircowave sitting ten feet from his cell on the range and the officer merely looked at him as if he was asking for some type of extraordinary treatment.  Later in the evening after eating the uncooked chicken Purkey again became extremely ill vomiting, stomack burning, headacke and suffering chills which persisted throughout the  night and morning.

Count   Three

THE DEFENDANTS PUNISHING PURKEY FOR HIS RELIGIOUS FASTING IS PROSCRIBED
UNDER BOTH THE FIRST AMENDMENT AND THE RFRA

13.   Being Buddhist Purkey often fast, sometimes of different magnitudes of

10.

from a total abstience of food, but not drink which he continues to take in sufficient amounts of liquids including water and jucies, to eating only once a day for several days during which time he does zazan or meditates. Purkey was fasting and meditating to cleanse his body and mind during the period in question, whereas he as well had food items in his cell purchased from the commissiary which were considered pure foods under the Buddhist tenets for fasting such as peanut/butter, crackers, powder juices and etc if the need arised for him to eat something to sustain himself during the fast and meditation. So at no time was his health in danger during these periods of religious fast.

14.    On July 18th, 2009 Case Worker Ryherd asked Purkey if he was on a hunger strike because he had not eaten all day or taken any trays served. Whether or not Purkey had eaten defendant Ryherd had no idea, because as previously noted Purkey had commissiary food items in his cell for consumption. Purkey perspicuously told Mr. Ryherd that he was not on a hunger strike, but that he was fasting and meditating, and as well as clarified to the defendant that he had commissiary food items in his cell if he needed something to eat during his Religious Fast. Mr. Ryherd told Purkey that he thought perhaps that this had something to do the complaint that he had made to the Warden about the uncooked, spoiled and rotten food being served on the commonfare diet, as well as to the shortages shortage being suffered on the same. The defendant was referring to the complaints Purkey had made to the Warden two days prior to this about those issues as well as anent being forced off the commonfare diet. "One has absolutely nothing to do with the other," Purkey told Ryherd. I am fasting and meditating under the tenets of my beliefs, Purkey clarified for Mr. Ryherd.

15.    On July 21st., 2008 all of Purkey's personal property was confisated from him, including all commissiary items icluding but not limited to three jars of peanutbutter, two large boxs of crackers, several packets of drink mix, bags

11.

of tuna - all in all Purkey had probably thirty to fourty dollars worth of commissary food items taken from him. Further' Mr. Ryherd and supposedly Unit Manager Julian order that all of Purkey's personal property be taken from him including his ,t.v., radio, headphones, clippers and all other personal property absent tooth paste, soap and a comb. When Purkey demanded a confisaction slip for these personal items taken from him Case Worker Ryherd shot back that they are not required to provide him with a confisaction slip when they take anything out of his cell. See Appendix (B) hereto attached. That is a standing tactic policy on SCU that whenever death row prisoners personal property is confiscated and believe me that is a common practice on SCU that staff is not required to comply with applicable BOP Policy to afford them with a confiscation slip, which of course Mr. Ryherd and Julian maintained in confiscating Purkey's property. The defendants told Purkey that he would receive his property back when he decided to take a regular tray and eat it in front of staff. "You are telling me that I have to break my religious fast and meditation and eat a regular tray to obtain back my personal property," Purkey as Mr. Ryherd. "That is correct, and until you decided to do just that we are not returning your property or food items," Ryherd clariied. See Appendix (C) hereto attached.

16. Purkey was forced to eat a regular tray in front of one of SCU security staff before he was allowed back his personal property, and then after being forced to eat a regular tray Purkey was not given back any of his person commissary items, although he was afforded back his t.v., radio and headphones. Mr. Ryherd advised Purkey that he needed to file a tort claim anent the missing commissary items, although as Mr. ryherd readily knew that without a valid confiscation slip clearly designating exactly what items were taken from him that Purkey's tort claim would be denied out right. And' of course this is exactly why SCU personnel have been order by applicable SCU administrative personnel not to comply with BOP Policy

12.

mandating that a confiscation slip be provided whenever an inmates personal property is taken.  Mr. Ryherd was not authorized to confiscated Purkey's property, nor punish him for undertaking a religious fast and practicing his religious beliefs through fasting and zazen/meditation.  According to Mr. Ryherd Unit Manager Julina ordered him to subject Purkey to these punitive action for undertaking his relig-ious fasting, although Mr. Julian has denied such knowledge of such to Purkey since tha time.  Purkey filed an administrative remedy in redress of this punitive action taken against him for undertaking his religious fasting, although such remedy has been twice rejected and Purkey prohibited from refiling of such by the defendants.  See Appendix (D) hereto attached.

IV.   Relief   Requested

A.   Issue A Declaratory Judgment:

1.   That the acts and ommissions as described through Count One thr Three are proscribed under the First and Eighth Amendments, as well as under the Statutory Provisions as set forth through the Religious Freedon and Restoration Act, 42 U.S.C. § 2000bb-1.

B.   Issue Injunctory Relief:

1.   Enjoining the defendants and/or their agents from continuing to deny Purkey a Religious Diet comparable with his Buddhist Religious Faith and tenets. Further' to cease serving Purkey spoiled, rotten and uncooked food items on the Certified Religious Diet, and to cease all shortages thereon.  To pro-hibit any further retaliatory actions to be taken against Purkey for his religious fasting and practicing of the tenets of his Buddhist Religion.

C.   Award Compensatory Damages in the following Amounts:

1.   $25, 000 jointly and severally against all the defendants through Counts (1 & (2);

2.   $25,000 against defendants Marberry, Julian and Ryherd for the deliberate

13.

and malicious constitutional violations as set forth through Court Three of the complaint.

    D.    Award Punitive Damages in the following Amounts:

    1.    $75,000 jointly and severally against all the defendants for their egregious and flagrant constitutionally proscribed acts as described through Count One & Two.

    2.    $75,000 jointly and severally against defendants Marberry, Julian and Ryherd for their egregious and flagrant constitutional violations as described through Count Three.

    E.    Grant Purkey an award of damages against the named defendants for all cost incurred in prosecuting this action, as well as an award for reasonable attorney fees. Finally grant Purkiey any and all other relief that this Court might find just and equitable.

## Purkey's Prior Civil Litigation History

1.    Purkey v. Simmons, (10th Cir. No.#01-3269(Dist.Court No.#00-3380-GTV) (E.D.Kan)(Sua Sponte Dismissed/Confirmed on Appeal).

2.    Purkey v. McKune, Dist.No.#00-cv-3218-GTV(E.D.Kan)(Voluntarily Dismissed)

3.    Purkey v. McKune, 01-CV-3019-JML(E.D.Kan)(Settlement)

4.    Purkey v. Green, 99-CV-3019 (E.D.Kan)(sua sponte dismissed/reversed in part and affirmed in part/10th Cir. No.#00-3218/August 17th, 2001)

5.    Purkey v. Green, No.# 01-3126-JAR (E.D.Kan.)(consolidated with Purkey v. Green, 99-CV-3356 on remand/grant of summary judgment for Purkey's failure to scrupulously adhere with the local rules of the court in filing his motion in opposition).

6.    Purkey v. Correction Corporation of America, No.#03-CV-3157 (E.D.Kan)(pending settlement negotiation confirmation/no fault/nondisclosure agreement.

7.    Purkey v. Marberry, No.#08-CV-0170-RLY(S.D.Ind)(actively being prosecuted with summons issued and awaiting government's answer to complaint).

### The Plaintiff's Certificate, Submission, and Jury Trial Request

The undersigned Wesley I. Purkey does hereby request trial by jury, and does

14.

hereby attest under penalty of perjury that all the allegations and statements made in the foregoing are true and correct to the best of his knowledge and beliefs pursuant to 28 U.S.C. § 1746.  He further submits this petition signed by him on this 5th day of February, 2009.

Dated: February 5th, 2009

RESPECTFULLY SUBMITTED,

Wesley I. Purkey #14679-045
United States Penitentiary
P.O. Box 33
Terre Haute, IN 47808
Plaintiff/Pro Se/Deponent

15.